UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SENSATIONS, INC. et al.,

                      Plaintiffs,                       FILE NO. 1:06-CV-300

v.                                         HON. ROBERT HOLMES BELL

CITY OF GRAND RAPIDS,

                      Defendant.

**CONSOLIDATED WITH**


LITTLE RED BARN ADULT
THEATRE & BOOKSTORE, INC.,

                      Plaintiff,                       FILE NO. 4:06-CV-60

v.                                         HON. ROBERT HOLMES BELL

CITY OF GRAND RAPIDS, et al.

                      Defendants.

_____/


## <u>OPINION</u>

This is a consolidated case combining two separate actions brought under 42 U.S.C. § 1983, which challenge a City of Grand Rapids ordinance regulating sexually oriented businesses.  The lead case, No. 1:06-cv-300, was filed by Plaintiffs Sensations, Inc. and Lady Godiva's Inc. (collectively, "Sensations") against Defendant City of Grand Rapids ("City").

The member case, No. 4:06-cv-60, was filed by Plaintiff Little Red Barn & Adult Theatre & Bookstore, Inc. ("Little Red Barn") against Defendant City of Grand Rapids and certain organizational and individual Defendants: Black Hills Citizens for a Better Community, Inc., Michigan Decency Action Council, Inc., Judy Rose and Dar Vander Ark (collectively, the "Non-City Defendants").  These consolidated matters are before the Court on motions to dismiss filed by the City and the Non-City Defendants (Docket #14 in Case No. 1:06-cv-300; Docket #12 in Case No. 4:06-cv-60).

On August 24, 2006, the Court heard oral argument on the motions to dismiss, as well as on Plaintiffs' motion for preliminary injunction.[1]  In an opinion and order issued August 28, 2006, the Court denied the motion for preliminary injunction (Docket ##60, 61). The Court also ordered the parties to file any supplemental materials or briefs within 30 days. Supplemental materials now have been filed by both Plaintiff Little Red Barn and by Defendant City.  For the reasons that follow, and for the reasons stated on the record in open court, the Court will grant Defendants' motions to dismiss.

---

[1]After the complaint was filed, the parties stipulated to a temporary restraining order that expired on July 14, 2006.  Defendants moved to dismiss the complaint under FED. R. CIV. P. 12(c).  The temporary restraining order thereafter was extended by stipulation until the day of oral argument on the motions to dismiss, August 25, 2006.  The Plaintiffs moved for continuation of the stay of enforcement for the entire period in which the action is pending.  The Court, construing Plaintiffs' motion as one for preliminary injunction, denied the motion.

## I.

On April 25, 2006, the City of Grand Rapids adopted Ordinance 2006-23, which was made part of the Grand Rapids City Code at Sec. 9.140.  *See* CITY OF GRAND RAPIDS ORDINANCE NO. 2006-23, *codified at* CITY OF GRAND RAPIDS CODE, § 9.140.  The Ordinance imposes time, place and manner restrictions on sexually oriented businesses, as defined in the statute, expressly for the purpose of controlling the secondary effects of such businesses. The Ordinance adopts and incorporates its findings and legislative record related to adverse secondary effects of sexually oriented businesses, including 32 judicial opinions and a number of supporting reports.  The legislative record also includes a series of affidavits by investigator Tim Reilly, recording his observations at numerous sexually oriented businesses, including Little Red Barn and Sensations.  Reilly's observations include evidence of sexual fluids on the walls and surfaces of closed peep show booths, as well as evidence of sexualized physical contact between patrons and performers at live show settings.  The entire legislative record is codified in Section 5.283 of the City Code.

In Section 1(b)(i) of the Ordinance, the Grand Rapids City Commission made specific findings that sexually oriented businesses "are often associated with a wide variety of adverse secondary effects including, but not limited to, personal and property crimes, prostitution, potential spread of disease, lewdness, public indecency, illicit drug use and drug trafficking, negative impacts on surrounding properties, urban blight, litter, and sexual assault and exploitation." CITY OF GRAND RAPIDS ORDINANCE NO. 2006-23, *codified at* CITY OF GRAND

RAPIDS CODE, § 9.140(1)(b)(1).  The Commission also found that illegal and unsanitary acts occur at unregulated sexually oriented businesses.  CITY OF GRAND RAPIDS ORDINANCE NO. 2006-23, *codified at* CITY OF GRAND RAPIDS CODE, § 9.140(1)(b)(ii).  Further, the Commission found that the noted secondary effects constitute a harm that the City has a substantial governmental interest in preventing and/or abating.  CITY OF GRAND RAPIDS ORDINANCE NO. 2006-23, *codified at* CITY OF GRAND RAPIDS CODE, § 9.140(1)(b)(iii).

The Ordinance has four principal restrictive components that are applicable only to "sexually oriented business[es]," as defined in CITY OF GRAND RAPIDS ORDINANCE NO. 2006-23, *codified at* CITY OF GRAND RAPIDS CODE, § 9.140(2)(b)(v): (1) a prohibition on total nudity; (2) regulations on "semi-nudity" (defined in significant part as female performers wearing pasties and a G-string), including a six foot buffer zone between performers and patrons and a no-touch rule; (3) an open-booth rule for adult arcades; and (4) a restriction on the hours of operation between 2:00 a.m. and 7:00 a.m.  The Ordinance contains a 180-day grace period for existing businesses to modify and comply, as well as a scienter requirement for any violation.  CITY OF GRAND RAPIDS ORDINANCE NO. 2006-23, *codified at* CITY OF GRAND RAPIDS CODE, § 9.140(3).

## II.

Defendants have moved to dismiss the complaint under FED. R. CIV. P. 12(c), which states as follows:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.  If, on a motion for judgment

4

on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Defendants argue that the ordinance and administrative record, as adopted and incorporated by the City and attached to the City's answer to the complaint, are part of the pleadings that may be considered by the Court without conversion of the motion into one for summary judgment under FED. R. CIV. P. 56.

Rule 12(c) ordinarily serves as a vehicle for raising several defenses under Rule 12(b) after the pleadings have closed. *See* 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE ("WRIGHT & MILLER") § 1267, at 216-18 (3d ed. 2004). As a result, a court ordinarily "will apply the same standards for granting the appropriate relief or denying the motion as it would have employed had the motion been brought prior to the defendant's answer under Rules 12(b)(1), (6), or (7) or under Rule 12(f)." *Id.* at 218; *see also Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987).

Under Rule 12(b)(6), a complaint may be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under

some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2000). The complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan*, 829 F.2d at 12 (6th Cir. 1987). However, the court need not accept as true legal conclusions or unwarranted factual inferences. *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998). A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).

Both Rule 12(c) and Rule 12(b)(6) provide that, where matters outside the pleadings are presented to and not excluded by the court, a motion on the pleadings will be considered one for summary judgment under FED. R. CIV. P. 56. See FED. R. CIV. P. 12(b)(6), 12(c); *Carter v. Stanton*, 405 U.S. 669, 671 (1972) (holding that a district court that considers matters outside the pleadings is required to convert a Rule 12(b)(6) motion into one for summary judgment). However, certain materials attached to the pleadings, such as matters of which the court may take judicial notice and items of unquestioned authenticity that are referred to in the challenged pleading and are integral to the case, may be considered by the court without conversion of the motion into one for summary judgment. *See* 5C WRIGHT & MILLER § 1364, at 136-40, and § 1366, at 183-86 (citing cases); *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (on a motion to dismiss, "the court may also consider other materials that are integral to the complaint, are public records, or are

6

otherwise appropriate for the taking of judicial notice."); *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360-61 (6th Cir. 2001); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003); *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 547 (6th Cir. 1999).

In the instant case, the City attached to its Answer a copy of the Ordinance as well as the legislative record for that Ordinance, which itself was adopted and incorporated into the ordinance.  Such materials are both referenced in the Complaint itself and are matters of public record.  As a result, consideration of the attachments does not require conversion of the motion into one for summary judgment under Rule 56.  *Wyser-Pratte*, 413 F.3d at 560; *see also Palay v. United States*, 349 F.3d 418, 425 n.5 (7th Cir. 2003) (a district court is entitled to take judicial notice of matters in the public record); *Stahl v. U.S. Dep't of Agriculture*, 327 F.3d 697, 700 (8th Cir. 2003) (upholding authority of court to take judicial notice of a variety of public records without conversion of motion under Rule 12(b)(6) into one under Rule 56); *Kane Enter. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) (a court may review the documents attached to a motion to dismiss "where the complaint refers to the documents and they are central to the claim."); *Meehan v. Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002) (consideration of essential documents attached to pleadings is proper in construing the sufficiency of the complaint).

However, in response to the City's motion for judgment on the pleadings, Plaintiff Little Red Barn attached the affidavit of Daniel Linz, Ph.D., together with his curriculum

7

vitae and numerous articles and studies outlined in the affidavit.  (Pl. Br. in Opp. to Mot. to Dismiss, Docket #31, Ex. B.)   Plaintiff's submission of Dr. Linz's affidavit and supporting materials arguably should be construed as a request to convert the motion to one for summary judgment under Rule 56.   In its supplemental brief, however, Plaintiff Little Red Barn strenuously urges that this Court should decline to consider the motion as one for summary judgment because it has not yet had opportunity to conduct discovery.

Were the Court to consider Dr. Linz's affidavit, it would be required to convert the motion for judgment on the pleadings into one for summary judgment.  *See* FED. R. CIV. P. 12(c) (mandating that if matters outside the pleadings are presented to and not excluded by the court, "the motion *shall* be treated as one for summary judgment . . . .").  Upon review, the Court concludes that the matter is one that may be determined on the pleadings and it declines to consider the affidavit of Dr. Linz.  For the same reasons, the Court declines to consider the affidavit of Richard McCleary, Ph.D., subsequently submitted by the City.  The Court's review shall be limited to the pleadings, together with the Ordinance and the legislative record of the City Commission, as adopted and incorporated in the Ordinance.

### III.

Plaintiffs' complaints are not identical, though they are similar.  Plaintiff Sensations sues only the City of Grand Rapids.  Plaintiff Little Red Barn sues both the City and the Non-City Defendants.  Although Plaintiff Sensations identifies five counts in its complaint, Count 1 alleges the only two legal theories of relief: (1) violation of 42 U.S.C. § 1983 under

the First, Fifth and Fourteenth Amendments, and (2) violation of 42 U.S.C. § 1983 based on the corollary provisions of the Michigan Constitution. The remaining counts address requested remedies in the form of injunctive relief, declaratory relief, damages and attorney fees. Plaintiff Little Red Barn raises the identical federal claims, but raises no Michigan constitutional claims.[2]

A.    First Amendment

Plaintiffs raise a number of challenges under the First Amendment. First, they allege that the Ordinance acts as a prior restraint on constitutionally protected expression. Second, they contend that the Ordinance is not a content-neutral law of general applicability, but instead is an impermissible content-based restriction. Third, they argue that the Ordinance is facially overbroad and unconstitutionally vague. Fourth, they assert that, even if it is construed as a content-neutral restriction, the Ordinance fails to meet the test of *City of Los Angeles v. Alameda Books*, 535 U.S. 425 (2002), and *City of Renton v. Playtime Theaters*, 475 U.S. 41 (1986), because it is not supported by reasonable evidence of adverse secondary effects and is not narrowly tailored to serve a legitimate governmental interest. Fifth, they argue that the Ordinance violates Plaintiffs' First Amendment right to free association.

---

[2]A state's failure to comply with its own law, rule or regulation does not by itself state a claim under § 1983. *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Section 1983 is addressed to remedying violations of federal law, not state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The Court therefore will not address the Michigan constitutional claims in this § 1983 action.

### 1.    Regulation of secondary effects

As the Supreme Court has held, a government's attempt to regulate the secondary effects of adult theaters and adult entertainment is treated as "content-neutral," since it is "aimed not at the *content* [of the speech], but rather at the *secondary effects* . . . on the surrounding community. *Renton*, 475 U.S. at 47; *DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 410 n.6 (6th Cir. 1997) (noting that such regulations should be judged under the standard for time, place or manner restrictions).   The Supreme Court has adopted an intermediate-scrutiny test for zoning regulations of adult businesses aimed at suppressing secondary effects, holding that such regulations are constitutional "so long as they are designed to serve a substantial government interest and do not unreasonably limit alternative avenues of communications."   *Renton*, 475 U.S. at 47.   A local ordinance regulating secondary effects of public nudity is constitutional if it satisfies a four-pronged inquiry: (1) the regulation is within the government's authority: (2) it serves a substantial government interest; (3) the interest is unrelated to the content of speech; and (4) the regulation is narrowly tailored – *i.e.*, not substantially broader than necessary – to serve the interest. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (1977) (applying test of *United States v. O'Brien*, 391 U.S. 367, 377 (1968)); *Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. of Trustees*, 411 F.3d 777, 789 (6th Cir. 2005); *DLS*, 107 F.3d at 410.

a.    authority

With respect to the first prong of the *City of Erie* inquiry, it is beyond serious question that the Grand Rapids City Commission possessed the authority under Michigan law to adopt an ordinance regulating sexually oriented businesses.  The City of Grand Rapids is a home rule city with broad authority to legislate on all matters of public concern.  MICH. CONST. 1963, art. 7, § 22; MICH. COMP. LAWS § 117.4j(3) ("Home Rule Cities Act" provides for the exercise of all municipal powers, regardless of whether they are expressly enumerated). Further, MICH. COMP. LAWS § 117.5h expressly permits cities to enact ordinances to regulate public nudity within city boundaries.

b.    substantial governmental interest

The Court next moves to the second prong of the analysis: whether the Ordinance serves a substantial governmental interest.  The Supreme Court repeatedly has held that local governments have an "undeniably important" interest in combating the adverse secondary effects of sexually oriented businesses.  *See City of Erie*, 529 U.S. at 296.  In *Renton*, 475 U.S. 41, 51-52 (1986), the Supreme Court squarely held that a local government is not required to conduct its own studies on secondary effects before enacting an ordinance. Instead, it may rely upon any evidence "reasonably believed to be relevant" to the secondary effects, including evidence from previous judicial opinions, land use studies, or anecdotal reports.  *Id.  See also City of Erie*, 529 U.S. at 297 (citing *Renton* for the proposition that "reliance on a judicial opinion that describes the evidentiary basis is sufficient"); *Alameda*

11

*Books*, 535 U.S. at 438; *Deja Vu of Cincinnati*, 411 F.3d at 791.  It also may rely upon previous findings in judicial opinions about secondary effects resulting from the presence of adult entertainment businesses.  *Renton*, 475 U.S. at 50-51; *City of Erie*, 529 U.S. at 297. Secondary effects can include a diverse range of problems, including negative impacts on surrounding properties, illicit sexual behavior, litter, and urban blight.  *See, e.g., City of Erie*, 529 U.S. at 290 (targeting "violence, sexual harassment, public intoxication, prostitution, the spread of sexually transmitted diseases and other deleterious effects"); *Deja Vu of Cincinnati*, 411 F.3d at 789-90 (citing *Richland Bookmart, Inc. v. Nichols ("Richland Bookmart I")*, 137 F.3d 435, 440 (6th Cir. 1998) (approving restrictions on adult businesses to prevent the secondary effects of "[r]educing crime, open sex and solicitation of sex and preserving the aesthetic and commercial character of the neighborhood surrounding adult establishments")).[3]  Secondary effects evidence need not consist of empirical data or a scientific study.  *See Alameda Books*, 535 U.S. at 438; *City of Erie*, 529 U.S. at 300 (plurality opinion) (noting that the Supreme Court has "flatly rejected" the notion that empirical analysis trumps local legislative judgments).  The party challenging the ordinance has the burden of disproving each secondary effect the regulation may serve.  *Alameda Books*, 535 U.S. at 438-39 (describing challenger's burden).  Citizen testimony alone may be sufficient

---

[3]In *Richland Bookmart, Inc. v. Nichols ("Richland Bookmart II")*, 278 F.3d 570 (6th Cir. 2002), the Sixth Circuit rejected the plaintiff's previously remanded equal protection challenge to the same ordinance.  Plaintiffs have raised no equal protection challenge in the instant case.

to satisfy the "very little" evidence standard of *Alameda Books*. *See World Wide Video of Washington, Inc. v. City of Spokane*, 368 F.3d 1186, 1195 (9th Cir. 2004). Moreover, a city need not disprove a challenger's theories of secondary effects. *Alameda Books*, 535 U.S. at 437. While a city bears the burden of providing evidence that supports a link between adult operations and the asserted secondary effects, "it does not bear the burden of providing evidence that rules out every theory for the link . . . ." *Alameda Books*, 535 U.S. at 437.

In the instant case, the City of Grand Rapids expressly relied upon decisions of the Supreme Court, the Sixth Circuit, the Michigan courts and other federal circuit courts, which have upheld each of the various restrictions set forth in the Ordinance, finding both sufficient evidence of secondary effects supporting a substantial governmental interest and that the relevant ordinances were narrowly tailored to meet that interest. The City also expressly relied upon studies conducted in other communities that support those findings of secondary effects. *See* CITY OF GRAND RAPIDS ORDINANCE NO. 2006-23, *codified at* CITY OF GRAND RAPIDS CODE, § 9.140(1)(b) (citing cases and studies). Based on these decisions and studies in other communities, as well as certain local information collected by an investigator, the City found that sexually oriented businesses are often associated with a wide range of secondary effects, including without limitation, "personal and property crimes, prostitution, potential spread of disease, lewdness, public indecency, illicit drug use and drug trafficking, negative impacts on surrounding properties, urban blight, litter, and sexual assault and exploitation." CITY OF GRAND RAPIDS ORDINANCE NO. 2006-23, *codified at* CITY OF GRAND

13

RAPIDS CODE, § 9.140(1)(b)(i).  The City further found that "[i]llegal and unsanitary acts involving nudity, including lewd conduct, masturbation, oral and anal sex, occur at unregulated sexually oriented businesses, including those businesses which provide private or semi-private rooms, booths, or cubicles for viewing films, videos, or live performances." CITY OF GRAND RAPIDS ORDINANCE NO. 2006-23, *codified at* CITY OF GRAND RAPIDS CODE, § 9.140(1)(b)(ii).

Each of these findings has been approved in the cases cited in the Ordinance, and the supporting factual records of those cases have been recognized as supporting the identified secondary effects and that such effects constitute a substantial government interest.  *See, e.g., Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976) (city's "interest in attempting to preserve the quality of urban life is one that must be accorded high respect."); *City of Erie*, 529 U.S. at 290 (city's findings that nude live entertainment had an "impact on the public health, safety and welfare by providing an atmosphere conducive to violence, sexual harassment, public intoxication, prostitution, the spread of sexually transmitted diseases and other deleterious effects" supported a legitimate governmental interest); *Bronco's Entertainment, Ltd. v. Charter Twp. of Van Buren*, 421 F.3d 440, 451 (6th Cir. 2005) ("The importance of the township's interest in combating the secondary effects of sexually oriented businesses is 'not debatable.'") (quoting *Wojcik v. City of Romulus*, 257 F.3d 600, 614 (6th Cir. 2001)); *Richland Bookmart I*, 137 F.3d at 440 ("Reducing crime, open sex and solicitation of sex and preserving the aesthetic and commercial character of the

14

neighborhoods surrounding adult establishments is a 'substantial government interest.'"); *DLS*, 107 F.3d at 410 ("[C]ourts repeatedly have found the prevention of crime and disease to satisfy this part of the *O'Brien* test.") (citing *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 582 (1991); *Renton*, 475 U.S. at 48; *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129, 134 (6th Cir. 1994)); *Bamon Corp. v. City of Dayton*, 923 F.2d 470, 473 (6th Cir. 1991) (holding that "ordinance aimed at eliminating carnal sexual activity in closed peep show booths in adult bookstores which, the city commission found, contributes to the epidemic spread of sexually transmitted diseases, including AIDS" was justified by substantial government interest in public health).

Plaintiffs argue that the Supreme Court's decision in *Alameda Books*, 535 U.S. at 434, permits them to challenge the substantiality of the City's findings by conducting discovery and submitting evidence that attacks the reliability of the studies and evidence upon which the City relied.[4]  Plaintiffs suggest that *Alameda Books* stands for the proposition that, in every case, a plaintiff may challenge the municipality's findings of secondary effects, even if that finding previously has been upheld on the same facts by a controlling court.

---

[4]In *Alameda Books*, the municipality relied upon a local study that did not directly support the secondary effect upon which the municipality based its ordinance.  Moreover, in *Alameda Books*, unlike in the instant case, the study upon which the city relied had never been found to support the restrictions adopted.  The Supreme Court held that municipalities were entitled to make reasonable inferences from evidence to reach a secondary-effect finding.  It therefore concluded that the study in question could form the legal basis for the ordinance, even if not directly supportive.  However, the Court held that, in such circumstances, parties seeking to challenge the ordinance would be permitted to introduce evidence that directly challenged that inference.

15

Contrary to Plaintiffs' interpretation, nothing in *Alameda Books* supports such a broad conclusion. As previously noted, a plurality of the Court in *Alameda Books* explicitly reaffirmed the *Renton* decision, which held that local municipalities need not conduct their own studies to enact ordinances to limit the secondary effects of sexually oriented businesses. *Id.* at 441-42, 451. Further, the Court reiterated the principle that "a municipality may rely on any evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial, independent government interest." *Id.* at 438 (quoting *Renton*, 475 U.S. at 51-52). As Justice Kennedy stated in his concurring opinion, "courts should not be in the business of second-guessing fact-bound empirical assessments of city planners. [I]f inferences appear reasonable, we should not say there is no basis for [the municipality's] conclusion." *Id.* at 451-52. The plurality firmly rejected a requirement that the evidence relied upon must rule out every other theory arising from the evidence presented. *Id.* at 437.

Here, in contrast to *Alameda Books*, the City did not attempt to use a study that supported one conclusion to support a second, somewhat related conclusion. Instead, the City relied upon the prior holdings of the Sixth Circuit and the Supreme Court on identical supporting facts to support identical restrictions previously approved by those courts. To permit Plaintiffs to challenge those findings and apply the burden-shifting analysis of *Alameda Books* to the instant case would directly undermine both the right of municipalities

16

to rely upon the studies and decisions from other jurisdictions and the fundamental rule of *stare decisis*.

Further, the Sixth Circuit, in *Deja Vu of Nashville, Inc. v. Metropolitan Gov't of Nashville & Davidson County* ("*Deja Vu of Nashville II*"), ___ F.3d ___, 2006 WL 2882969, at * 5 (6th Cir. 2006) , recently has rejected Plaintiff's contention that it is entitled to conduct discovery to undermine the City's secondary effects findings. In *Deja Vu of Nashville II*, the Sixth Circuit squarely held that a plaintiff is not entitled to discovery to challenge an ordinance regulating sexually oriented businesses where the ordinance in question was supported by cases and studies previously approved by the courts:

> [M]ore fundamentally, Deja Vu is not entitled to discovery regarding secondary effects. We have followed the Supreme Court in deferring to local governments' conclusions regarding whether and how their ordinances address adverse secondary effects of adult-oriented establishments. It is clear, for instance, that a local government does not need localized proof of adverse secondary effects in order to regulate adult establishments. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51-52 (1986); *DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 411 (6th Cir. 1997) (quoting *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 582-84 (1991) (Souter, J., concurring in the judgment)). Similarly, all that is needed to justify a regulation is a reasonable belief that it will help ameliorate such secondary effects. *Deja Vu of Cincinnati, L.L.C. v. Union Township Bd. of Trustees*, 411 F.3d 777, 790 (6th Cir. 2005) (en banc) (quoting *Richland Bookmart, Inc. v. Nichols*, 137 F.3d 435, 440 (6th Cir. 1998)). Deja Vu offers no authority entitling it to undermine this deference through discovery.

*Id.* Where, as here, the local ordinance is based on controlling cases finding evidence of secondary effects and approving identical restrictions, discovery may not properly be used to undermine the conclusion reached by those controlling courts. *Id.*; *see also Triplett Grille*,

40 F.3d at 135 (holding that an inferior court is bound to adhere to both the result and the reasoning of a decision by a superior court that decided the constitutionality of a virtually identical ordinance); *Doughty v. City of Vermillion*, 118 F. Supp. 2d 819 (N.D. Ohio 1999) (dismissing complaint challenging an ordinance governing sexually oriented businesses for failure to state a claim), *aff'd* 234 F.3d 1268 (2000).

c.    interest unrelated to content of speech

Plaintiffs next argue that the Ordinance fails to meet the third prong of the test, that the Ordinance be content-neutral.  They suggest that the real purpose behind the Ordinance is to regulate erotic speech, rather than to regulate the secondary effects of that speech.  They argue that, regardless of its stated purpose, the Ordinance was adopted to placate certain religious people and groups who were opposed to all sexually explicit speech and expression. Plaintiffs therefore contend that the Ordinance should be considered content based and receive strict scrutiny.  *See Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994) (content-based regulation is subject to strict scrutiny).

As previously discussed, the Supreme Court has recognized that, notwithstanding their impact on speech, public decency restrictions may be treated as content-neutral when based on attempts to regulate secondary effects.  *See Alameda Books*, 535 U.S. at 445 (noting that labeling of secondary-effects regulation as content-neutral is legal fiction, but recognizing that application of intermediate review remains proper); *City of Erie*, 529 U.S. at 289 (approving intermediate review).  On its face, the Ordinance expressly and exclusively

18

declares its intent to regulate secondary effects.  To the extent Plaintiffs attempt to suggest that the City's real motivation in passing the ordinance was not to address the secondary effects of sexually oriented businesses but to accede to the religious and moral positions of certain individuals and to limit speech, their argument is foreclosed.  The Supreme Court repeatedly has held that courts "will not strike down an otherwise constitutional statute on the basis of an alleged illicit motive." *City of Erie*, 529 U.S. at 292 (following *O'Brien*, 391 U.S. at 382-83, and *Renton*, 475 U.S. at 47-48).  Plaintiffs therefore are not entitled to introduce evidence challenging the stated purpose of the Ordinance.  *Id.*

> d.     narrowly tailored

The Supreme Court has held that, in order to be found narrowly tailored, an ordinance need not be the least restrictive means of addressing a city's substantial governmental interests.  *See Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989).  "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, . . . the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech restrictive alternative." *Id.*  To survive scrutiny, a content-neutral regulation "need only refrain from 'burden[ing] substantially more speech than is necessary to further the government's legitimate interests.'" *Bronco's Entertainment*, 421 F.3d at 451 (quoting *Ward*, 491 U.S. at 799).

The Supreme Court twice has recognized that a prohibition on full nudity similar to that described in the Ordinance had only a *de minimis* impact on the expressive element of

nude dancing. *City of Erie*, 529 U.S. at 301 ("The requirement that dancers wear pasties and G-Strings is a minimal restriction in furtherance of the asserted government interests, and the restriction leaves ample capacity to convey the dancer's erotic message."); *Barnes*, 501 U.S. at 572 ("Indiana's requirement that the dancers wear at least pasties and G-strings is modest, and the bare minimum necessary to achieve the State's purpose."). The Court expressly rejected the argument made by Plaintiffs in the instant case that, because the Ordinance bars full nudity, it constitutes a complete ban on one type of expressive speech. *See City of Erie*, 529 U.S. at 292-93 ("Justice Stevens argues that the ordinance enacts a complete ban on expression. We respectfully disagree with that characterization. The public nudity ban certainly has the effect of limiting one particular means of expressing the kind of erotic message being disseminated at Kandyland. But simply to define what is being banned as the 'message' is to assume the conclusion.").

Similarly, the Sixth Circuit has found that restrictions on the proximity of dancers to patrons and the "no-touch" rule were narrowly tailored to achieve a city's goal of preventing secondary effects. *See DLS*, 107 F.3d at 413 (finding six-foot buffer zone to be narrowly tailored) (citing cases); *Deja Vu of Nashville I*, 274 F.3d at 396-97 (finding three-foot buffer and no-touch rule to "go[] no farther than necessary" to meet city's health and crime-prevention goals). The Sixth Circuit also has found that an open-booth requirement for adult arcades is narrowly tailored to address secondary effects. *See Richland Bookmart I*, 137 F.3d at 441; *Bamon Corp.*, 923 F.3d at 473-74. Finally, limitations on the hours of operation of

sexually oriented businesses repeatedly have been found to be narrowly tailored.  *See Deja Vu of Cincinnati*, 411 F.3d at 791; *Richland Bookmart I*, 137 F.3d at 441.

In sum, each of the restrictions contained in the Ordinance have previously been found to be narrowly tailored to meet the government's substantial interest in ameliorating the secondary effects of sexually oriented businesses.  Under the existing case authority, therefore, this Court must conclude that the Ordinance is a constitutional, content-neutral time, place and manner restriction designed to regulated the secondary effects of sexually oriented businesses.  *See Deja Vu of Nashville II*, 2006 WL 2882969, at *5; *Triplett Grille*, 40 F.3d at 135.

### 2.     Prior restraint

In their complaints, Plaintiffs allege that the Ordinance places an impermissible prior restraint on the exercise of their First Amendment rights.  In their responses to the motions for judgment on the pleadings, however, Plaintiffs entirely fail to argue the basis for their allegation.

"The term 'prior restraint' is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur."  *Alexander v. United States*, 509 U.S. 544, 550 (1993).  "A 'prior restraint' exists when the exercise of a First Amendment right depends on the prior approval of public officials.'"  *Bronco's Enter.*, 421 F.3d at 444 (quoting *Deja Vu of Nashville I*, 274 F.3d at 400).  Prior restraints are presumptively invalid because of "the risk

of censorship associated with the vesting of unbridled discretion in government officials" and "the risk of indefinitely suppressing permissible speech when a licensing law fails to provide for the prompt issuance of a license." *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 889 (6th Cir. 2000); *see also Deja Vu of Nashville I*, 274 F.3d at 400.

Plaintiffs have failed to allege any sort of prior restraint in the instant case. The prior-restraint concept comes into play only when licensing procedures exist that give unbridled discretion to authorities to grant or deny permits. *See Thomas v. Chicago Park Dist.*, 534 U.S. 316, 323 (2002). The Ordinance involves no license or permit requirement. In addition, although closure of noncompliant businesses may be said to limit future expression, the closing of adult facilities based on past illegal conduct has been upheld by the Supreme Court as not being a prior restraint. *See Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1987). As a result, even if a facility ultimately is closed for failure to comply with lawful conduct restrictions, prior restraint analysis is inapplicable to the Ordinance.

### 3.    Freedom of association

The Supreme Court has recognized two types of freedom-of-association claims. In one line of cases, the "intimate association" cases, the Court has held that choices to enter into and maintain certain kinds of intimate human relationships may not be the subject of undue intrusion by the state. *See Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984). In the second line of freedom-of-association decisions, the "expressive association" decisions, the Court has recognized a right of individuals "to associate for the purpose of engaging in

those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* at 618.  The Court has identified three types of governmental action that may unconstitutionally infringe on the freedom: (1) imposing penalties on individuals because of their membership in a disfavored group; (2) requiring disclosure of the fact of membership in a group seeking anonymity; and (3) interference with the internal organization or affairs of the group.  *See Roberts*, 468 U.S. at 622-23.

Plaintiffs contend that the Ordinance violates the right of expressive association between the audience and the entertainers by preventing speech and ordinary social contact between them.  They argue that patrons frequent sexually oriented businesses in order to share similar ideas, emotions and expressed communication that is banned by the Ordinance. They contend that, because the Ordinance infringes upon such association, it must be subjected to strict scrutiny under *Roberts*.

In *Deja Vu of Nashville I*, 274 F.3d at 396, the Sixth Circuit recognized that "the First Amendment protects entertainers and audience members' right to free expressive association. They are certainly engaged in a 'collective effort on behalf of shared goals.'" *Id.* (quoting *Roberts*, 468 U.S. at 622).  As the court noted, however, "[t]he right to associate for expressive purposes . . . is not absolute." *Id.* Instead, regulations infringing on that right are constitutional if adopted to serve compelling state interests that cannot be achieved through means significantly less restrictive of associational rights.  *Id.* (citing *Roberts*, 468 U.S. at 623).

23

In *Deja Vu of Nashville I*, the Sixth Circuit reviewed restrictions similar to those imposed by the Ordinance, including a three-foot buffer zone and no-touch rule. The court upheld the restrictions, finding that, "[i]n attempting to restrict opportunities to engage in prostitution and to guard against the spread of disease through the public release or exchange of bodily fluids, Metropolitan Nashville has gone no farther than necessary . . . ." *Deja Vu of Nashville I*, 274 F.3d at 396-97. The court noted that, in challenging the restrictions imposed, plaintiffs repeated a variety of arguments previously rejected in *DLS*, 107 F.3d at 413. *Id.* at 397. The court held that mere economic impact on sexually oriented businesses who are forced to reconfigure does not demonstrate that an ordinance goes too far in its regulation. *Id.* (citing *DLS*, 107 F.3d at 413). Further, the court rejected the plaintiffs' argument that the restriction foreclosed the right of dancers to profit from their expression, finding that alternate means of tipping remained that did not require touching during performances. *Id.* Finally, the court held that the no-touch/buffer zone did not effectively bar verbal communication between dancers and customers. *Id.*[5]

In sum, the Sixth Circuit squarely and unequivocally has rejected Plaintiff's freedom-of-association claims. Under controlling Sixth Circuit case law, therefore, the claim must fail.

---

[5]The plaintiffs in *Deja Vu of Nashville I*, 274 F.3d at 397-98, also challenged the lack of a *mens rea* requirement in the restrictions. Plaintiffs in the instant case do not repeat this argument, inasmuch as the Grand Rapids Ordinance contains a scienter requirement.

### 4.   Overbreadth

Plaintiffs argue that the Ordinance as written is unconstitutionally overbroad, as it reaches protected conduct.  The Ordinance prohibits exposure of "specified anatomical areas" or "specified sexual activities" in any "sexually oriented business," defined as:

> "Sexually oriented business" for purposes of this chapter shall mean any adult motion picture theater, adult bookstore, adult novelty store, adult cabaret or semi-nude model studio as defined in Section 5.284 of this Code.

CITY OF GRAND RAPIDS ORDINANCE NO. 2006-23, *codified at* CITY OF GRAND RAPIDS CODE, § 9.140(2)(b)(v).  Section 5.284 of the City of Grand Rapids Code defines an "adult motion picture," "adult bookstore," adult novelty store," "adult cabaret" and "semi-nude model studio" by reference to the amount of time and regularity with which it features "specified sexual activities" and "specified anatomical areas."  CITY OF GRAND RAPIDS CODE, § 5.284(1)-(6).   "Specified sexual activities" are defined as: "(a) Human genitals in a state of sexual stimulation or arousal; (b) Acts of human masturbation, sexual intercourse or sodomy; (c) Fondling or other erotic touching of human genitals, pubic region, buttock or female breast." CITY OF GRAND RAPIDS CODE, § 5.284(3).  "Specified anatomical areas" are defined as: "(a) Less than completely and opaquely covered: (i) Human genitals, pubic region; (ii) Buttock, and (iii) The nipple and/or areola of the female breast; and (b) Human male genitals in a discernible turgid state, even if completely and opaquely covered."  CITY OF GRAND RAPIDS CODE, § 5.284(4).

Plaintiffs do not dispute that they are sexually oriented businesses within the meaning of the Ordinance.  They also admit that they "are unlikely to offer performances of Shakespeare's plays . . ." or offer other entertainment by performers such as "Brittany Spears, Madonna or Michael Jackson" that might incidentally violate the prohibitions of the Ordinance.  (Sensations' Br. in Resp. to City's Mot. to Dismiss, at 29-30.)  Nevertheless, they argue, the potential exists for some business to regularly present artistic performances containing the proscribed sexual conduct, bringing it under the coverage of the Ordinance, even if that business was not the sort of "sexually oriented business" that creates secondary effects.  Plaintiff's therefore argue that the Ordinance is overbroad.

As the Supreme Court repeatedly has discussed, facial invalidation under the overbreadth doctrine is "strong medicine" that should be utilized "only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613.  "The overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. *Id.* at 615.  "[T]he mere fact that one can conceive some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).  Instead, there must exist "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Id.* at 801.  "A law is overbroad under the First Amendment if it 'reaches a substantial number of impermissible applications' relative to the law's legitimate

sweep." *Deja Vu of Nashville I*, 274 F.3d at 387 (quoting *New York v. Ferber*, 458 U.S. 747, 771 (1982)).  In addition, in determining a facial challenge to a statute, if the statute is "'readily susceptible' to a narrowing construction that would make it constitutional, it will be upheld." *Virginia v. Amer. Booksellers Ass'n*, 484 U.S. 383, 397 (1988) (citations omitted).

Here, the overbreadth challenge must fail.  As the Court previously has discussed, the statute is narrowly tailored to meet the governmental interest in preventing identified secondary effects.   The provisions of the Ordinance, when read together, prevent any realistic chance that the Ordinance will be applied to a setting other than a "sexually oriented business" or to the definition of a venue not associated with the identified secondary effects.

Further, in *Deja Vu of Nashville II*, 2006 WL 2882969, at *4, the Sixth Circuit recently considered the revision of an ordinance it had previously determined was overbroad because it barred "any exhibition of any motion pictures, films, or videos depicting 'specified sexual activities' or 'specified anatomical areas.'" *Id.* (citing METRO. CODE OF LAWS § 6.54.070(Y) (1999)).  In the revised ordinance, the municipality had amended its definition of "sexually oriented" to showings "that regularly depict[] material which is distinguished or characterized by an emphasis on matter depicting 'specified sexual activities or specified anatomical areas' offered for observation by the patron(s) on the premises of a 'sexually oriented business.'" *Id.* (citing METRO. CODE OF LAWS § 6.54.010(Y)).  In addition, the court reiterated that the original definition of "sexually oriented business" was not found to be overbroad.  *Id.*  That definition requires the same "regularity" in the offering of material or

exhibitions depicting or relating to "specified sexual activities" and "specified anatomical areas" as described by the Grand Rapids Ordinance.  The court held that "'the requirement of being a "sexually oriented business" narrows the Ordinance's application to those theaters that regularly present material distinguished or characterized by an emphasis on sex acts or particular body parts.  Again, reading the definitions together saves the parts from overbreadth.'"  *Id.* at *5 (quoting *Deja Vu of Nashville I*, 274 F.3d at 388).  The revised ordinance, having narrowed further the definition as applied to the showing of adult films, was held constitutional.  *Id.*

Like the ordinance in *Deja Vu of Nashville II*, the Ordinance is applicable only to conduct occurring at "sexually oriented businesses," and it defines "sexually oriented business" by reference to the quantity, amount of time and regularity with which they depict or present "specified sexual activities" or "specified anatomical areas."  *Cf. Odle v. Decatur County*, 421 F.3d 386 (6th Cir. 2005) (rejecting general public nudity ordinance as overbroad because it applied outside the context of sexually oriented businesses associated with secondary effects).  As a result, Plaintiffs fail to allege "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court."  *Taxpayers for Vincent*, 466 U.S. at 801.

B.    Vagueness

Plaintiffs next contend that the Ordinance is unconstitutionally vague.  A law is void for vagueness "if its prohibitions are not clearly defined."  *Grayned v. City of Rockford*, 408

U.S. 104, 108 (1972). "Vague laws are problematic because they (1) 'may trap the innocent by not providing fair warning,' (2) fail to 'provide explicit standards for those who apply them,' and (3) threaten 'to inhibit the exercise of First Amendment freedoms.'" *Deja Vu of Cincinnati*, 411 F.3d at 798 (quoting *Grayned*, 408 U.S. at 108-09). A law must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *see also Deja Vu of Cincinnati*, 411 F.3d at 798; *United States v. Salisbury*, 983 F.2d 1369, 1378 (6th Cir. 1993) (a law is not unconstitutionally vague if "ordinary people, exercising ordinary common sense, can understand it and avoid conduct which is prohibited").

Although both Plaintiffs make allegations of vagueness in their complaints, only Plaintiff Sensations actually argues the issue in its brief in opposition to the City's motion to dismiss. Sensations argues that the Ordinance is vague for two reasons. First, it contends that it is impossible for the average person to read the language of the Ordinance defining "nudity" and "semi-nudity" and determine what is allowed.

The Ordinance bans full nudity in sexually oriented businesses. "Nudity" is defined as follows:

> "Nudity," "nude," or "state of nudity" means the knowing or intentional live display of a human genital organ or anus with less than a fully opaque covering or a female's breast with less than a fully opaque covering of the nipple and areola. Nudity, as used in this section, does not include a woman's breastfeeding of a baby whether or not the nipple or areola is exposed during or incidental to the feeding.

29

CITY OF GRAND RAPIDS ORDINANCE NO. 2006-23, *codified at* CITY OF GRAND RAPIDS CODE, § 9.140(2)(b)(ii).  The Ordinance permits semi-nudity, as long as the semi-nude employee remains at least six feet from the patrons on a fixed 18-inch platform in a room of at least 600 square feet.  The Ordinance requires a knowing or reckless mental state to prove a violation of the restrictions.  "Semi-nudity is defined as follows:

> "Semi-nudity," "semi-nude," or in a "semi-nude condition" means the showing of the female breast below a horizontal line across the top of the areola and extending across the width of the breast at that point, or the showing of the male or female buttocks.  This definition shall include the lower portion of the human female breast, but shall not include any portion of the cleavage of the human female breasts exhibited by a bikini, dress, blouse, shirt, leotard, or similar wearing apparel provided the areola is not exposed in whole or in part.

CITY OF GRAND RAPIDS ORDINANCE NO. 2006-23, *codified at* CITY OF GRAND RAPIDS CODE, § 9.140(2)(b)(iv).

Plaintiff Sensations argues that an ordinary person would not understand how a person could be semi-nude, exposing the lower half of the female breast, without revealing the nipple and areola.  Plaintiff's argument is disingenuous.  A dancer wearing pasties and a G-string would be semi-nude, because her limited clothing would reveal the lower half of the female breast and the buttocks.  She nevertheless would be in compliance with the ban on full nudity because her clothing would cover the nipple and areola as well as the anus.  The statute is far from vague.

Second, Sensations argues that the six-foot rule is unconstitutionally vague because it is unclear whether the distance is measured from the dancer's feet or from some other part

of her anatomy that may come closer a patron.  The alleged vagueness is unpersuasive.  The Ordinance states as follows:

> No employee shall knowingly or intentionally, in a sexually oriented business, appear within view of any patron in a semi-nude condition unless the employee, while semi-nude, shall be and remain at least six (6) feet from all patrons and on a fixed stage at least eighteen (18) inches from the floor in a room of at least six hundred (600) square feet.

CITY OF GRAND RAPIDS ORDINANCE NO. 2006-23, *codified at* CITY OF GRAND RAPIDS CODE, § 9.140(3)(c).  The language, as written, clearly expresses a requirement that all parts of the semi-nude employee's body shall remain six feet away from all parts of the body of any patron.  Vagueness is manufactured only by suggesting that the Ordinance could have been written differently, to require that the dancer only keep her feet at least six feet away from the feet of any patron.  Absent such limiting language, the Ordinance is given its plain meaning.

"Condemned to the use of words, we can never expect mathematical certainty from our language." *Grayned,* 408 U.S. at 110.  Nevertheless, the language in issue in the instant case is the subject of common use and understanding. *Deja Vu of Cincinnati*, 411 F.3d at 798. Because ordinary people can understand the language of the Ordinance, Plaintiff's vagueness challenge must fail. *See Amer. Mini Theatres*, 427 U.S. at 59-61 (rejecting vagueness challenge to ordinance restricting sexually oriented businesses); *Richland Bookmart I*, 137 F.3d 435, 441 (6th Cir. 1998) (same).

C.    Taking

Plaintiffs allege in their complaints that the Ordinance constitutes an unconstitutional taking of property without just compensation and without due process.  *See* U.S. CONST. AMEND. V.   Neither Plaintiff, however, has explained its position in its brief or responded to the City's argument in its motion to dismiss.   The claim, therefore, appears waived. Assuming it was not waived, however, the allegation is without merit.

To establish a "taking" under the Fifth Amendment, Plaintiffs must establish one of three things: (1) a permanent physical invasion of their land, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982); (2) destruction of "all economically beneficial uses" of their property, *Lucas v. South Carolina Coastal C*ouncil 505 U.S. 1003, 1019; or (3) an interference with distinct investment-backed expectations such that "the interference with property can be characterized as a physical invasion by government," as opposed to adverse economic impacts that flow from regulations designed to promote "the health, safety, morals, or general welfare." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005) (*quoting Penn Central Trans. Co. v. City of New York*, 438 U.S. 104, 124-25 (1978). "[T]hese three inquiries . . . share a common touchstone.  Each aims to identify regulatory actions that are the functional equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Lingle*, 544 U.S. at 539.

Plaintiffs entirely fail to allege that a taking has occurred under any of the three tests. The Ordinance does not call for any physical invasion of property.  In addition, the Ordinance

in no way deprives Plaintiffs of "all economically beneficial uses" of their land.  Similarly, the Ordinance does not impose the kind of interference that would be tantamount to a physical invasion of the property.  Instead, the Ordinance merely places some narrow limitations on the kind of conduct that may occur on the property.  Plaintiffs' general allegations that they have been deprived of their property in violation of the Fifth Amendment therefore fail to state a claim.

    D.    <u>Due Process</u>

Plaintiffs next generally allege that the Ordinance violates their rights to procedural and substantive due process.  Again, Plaintiff Sensations is the only Plaintiff to address either due process issue in its brief.  Sensations, however, identifies a single case in support of its undifferentiated due process claim, *Flanagan's Enter., Inc. v. Fulton County*, 242 F.3d 976 (11th Cir. 2001).  Sensations fails entirely to identify the standard applicable to a review of legislative action for purposes of either procedural or substantive due process.  Instead, it merely reargues its complaints that the City's evidence of secondary effects was flawed and reliance upon it was unreasonable.

In order to prove a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must satisfy three elements: (1) the plaintiff has a life, liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) the plaintiff was deprived of its interest within the meaning of the Due Process Clause; and (3) the state did not afford the plaintiff adequate procedural rights prior to the deprivation of its interest.  *See Med Corp.,*

33

*Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002).  Assuming for purposes of this decision that Plaintiffs meet the first two elements of the test, they fail to demonstrate the third element.  "[N]o notice or opportunity to be heard need proceed any legislative action of general applicability."  *37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614, 619 (6th Cir. 1997) (citing *United States v. Florida East Coast Ry. Co.*, 410 U.S. 224, 244-45 (1973); *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915)).  As a consequence, legislation "enacted in the normal manner required by law," *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 969 (9th Cir. 2003), meets the requirements of procedural due process.  *Id.*

As the cases note, however, in determining whether an action is legislative, the Court must focus on the character of the action, not simply its label.  *See Hotel & Motel Ass'n*, 344 F.3d at 969; *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 896 (6th Cir. 1991).  Where only a few persons are targeted or affected and the action affects them on an individual basis, greater procedural rights may attach.  *Id.*

Plaintiff Sensations does not contest that the Ordinance was legislative action of general applicability.  Both Plaintiffs have failed to allege or argue that they were singled out by the legislation.  *See Nasierowski*, 949 F.2d at 896.  The Ordinance on its face applies generally to all sexually oriented businesses.  As a result, on the face of the pleadings, the Ordinance was of general applicability.  Plaintiffs therefore were not entitled to

individualized notice and hearing.  Their procedural due process claims therefore are without merit.

Substantive due process encompasses the notion that "governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed."  *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992).  A legislative action violates substantive due process only if it is arbitrary and capricious.  *37712, Inc.*, 113 F.3d at 619; *Sam & Ali, Inc. v. Ohio Dep't of Liquor Control*, 158 F.3d 397, 403 (6th Cir. 1998).  "A municipal ordinance is 'arbitrary and capricious,' and hence is constitutionally invalid as transgressing due process requirements, 'if it fails to advance a legitimate governmental interest or if it is an unreasonable means of advancing a legitimate governmental interest.'"  *Id.* (quoting *Curto v. City of Harper Woods*, 954 F.2d 1237, 1243 (6th Cir. 1992)).  As the Court previously has discussed, under controlling precedent, the City's interest in curbing secondary effects is not merely a legitimate governmental interest, but a substantial one.  Further, the Ordinance imposes restrictions that are narrowly tailored to serve that interest.  It necessarily follows from those determinations that the Ordinance is neither arbitrary nor capricious.

E.    Claims Against Non-City Defendants

Plaintiff Little Red Barn broadly alleges that the Non-City Defendants violated its constitutional rights by advocating for the Ordinance and by raising money to be used by the City to defend the Ordinance in the event of a constitutional challenge, like the one before

35

this Court.  Although Little Red Barn suggested in its complaint that the conduct of the Non-City Defendants was taken by state actors[6] or that it constituted a bribe under Michigan law,[7] at no time did Little Red Barn allege or argue that the Non-City Defendants conspired with the City Commission to deprive Little Red Barn of its rights.  At oral argument, counsel for Little Red Barn was entirely unable to articulate a theory under which the Non-City Defendants would be liable under § 1983.  In its post-argument supplemental brief, however, Little Red Barn asserts for the first time that the Non-City Defendants conspired with the City to deprive it of its constitutional rights.

A private person may be said to act "under color of state law" when that person conspires with state officials to violate the constitutional rights of others.  *Tower v. Glover*, 467 U.S. 914, 920 (1984).  To maintain a cause of action for conspiracy under 42 U.S.C. §§ 1983 or 1985(3), a plaintiff must establish the following four elements:  (1) a conspiracy

---

[6]To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996).  In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)).  Plaintiff's allegations in the complaint in no way support a conclusion that the Non-City Defendants were acting under color of state law.

[7]As the Court previously discussed, a violation of state law does not by itself state a claim under § 1983.  *Smith*, 954 F.2d at 347-48; *Pyles*, 60 F.3d at 1215; *Sweeton*, 27 F.3d at 1166.  Further, as Plaintiff admitted at oral argument, it failed to make any allegation of action that would constitute a bribe.

36

involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.   *See Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)).   The plaintiff further must demonstrate that the conspiracy was motivated by a class based animus, such as race.   *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), *cited in Doughty*, 118 F.3d at 825;  *Johnson*, 40 F.3d at 839; *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996).

Little Red Barn's argument is entirely without merit.  First, as set forth in the Court's earlier discussion, Plaintiffs have failed to demonstrate that the City, by enacting the Ordinance, deprived them of any right under the United States Constitution.   As a consequence, Little Red Barn cannot state a claim that the Defendants conspired to do so. *See Doughty*, 118 F. Supp. 2d at 825.  Second, Plaintiff Little Red Barn fails even to allege a class-based discriminatory animus behind the actions of the City and Non-City Defendants. The Sixth Circuit expressly has held that sexually oriented business owners are not a suspect class under the Constitution. *See Richland Bookmart II*, 278 F.3d at 574.  For both reasons, the claim must be dismissed.

F.    State-Law Claims

To the extent Plaintiff Sensations intends to assert independent violations of state law, this Court declines to exercise supplemental jurisdiction.  Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits.  *See Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of North Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991); *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998). Accordingly, Plaintiff's state law claims are dismissed without prejudice.

**IV.**

For the foregoing reasons, Defendants' motions to dismiss will be granted and Plaintiffs' complaints will be dismissed on the pleadings.  A Judgment consistent with this Opinion shall be entered.

Date:    October 23, 2006                    /s/ Robert Holmes Bell
                                             ROBERT HOLMES BELL
                                             CHIEF UNITED STATES DISTRICT JUDGE

38